FILED

2026 May-07  AM 11:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**TEAIRE GANGLEY,**
    Plaintiff,

**v.**

**IMMANUEL HOME
CARE, INC.,**
    Defendant.

**Case No. 5:24-cv-1095-CLM**

## MEMORANDUM OPINION

Teaire Gangley sues her former employer, Immanuel Home Care ("IHC"), for alleged Title VII violations. On August 25, 2025, Judge Burke, then presiding over this case, dismissed Gangley's original complaint because of pleading deficiencies. But Judge Burke granted Gangley leave to amend. Gangley amended, and now IHC moves to dismiss her amended complaint (doc. 19).

For the reasons below, the court **GRANTS** IHC's motion to dismiss but will allow Gangley *one* final chance to replead her claims stemming from her reassignment to a patient "in a vegetative state."

## BACKGROUND

Because Gangley is defending against a motion to dismiss, the court takes her pleaded facts as true. *See Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020).

### A.    Factual Allegations

IHC provides in-home care services for seniors in Huntsville. To provide those services, IHC employs caregivers who report to patient homes. Gangley is a black woman who worked at IHC as a caregiver. In February 2023, IHC assigned Gangley to one of its patients, Charles McCay.

On February 27, Gangley reported to McCay's home and "was confronted with a shotgun." (Doc. 15, p. 5). Gangley reported the incident to her supervisor, Tommy Anderson. The next day, Gangley returned to McCay's residence. This time, McCay "repeatedly referred to [Gangley] as his 'little nigger girl' and his 'little black girl.'" (*Id.*). McCay also told Gangley "his scrotum would not be sexually pleasing to her." (*Id.*). Again, Gangley reported the harassment to Anderson. Anderson disregarded her complaint, laughed, and said "just because [you] are black does not mean that you are entitled to anything." (*Id.* at p. 6).

Gangley went back to McCay's house on March 3. During this shift, McCay demanded Gangley "lay on the couch with him" and he "attempted to grab [Gangley's] breast." (*Id.*). Gangley resisted and returned to her car. McCay followed her outside and tried to open the car door. But McCay managed to leave. McCay then reported this incident to Anderson.

After Gangley's third complaint, IHC transferred her to a different patient "who was in a vegetative state." (*Id.* at p. 4). Gangley was pregnant at the time, so Gangley says she "could not provide the requested care" for the patient. (*Id.*). Gangley contends that IHC knew of her pregnancy-related restrictions but assigned her to the new patient anyway. On April 20, 2023, Gangley quit.

## B.   Procedural History and Gangley's Amended Claims

Gangley filed her original complaint on August 12, 2024, and claimed that IHC subjected her to a hostile work environment and unlawful retaliation. Judge Burke found Gangley's claims deficient and dismissed her complaint. He allowed Gangley to amend her complaint. Gangley did so. The case was then transferred to this court.

Gangley brings three claims. The court summarizes them below:

- **Count 1: Substantive Hostile Work Environment under Title VII, 42 U.S.C § 2000e, *et seq.*** Gangley contends that IHC subjected her to a hostile work environment by ratifying McCay's conduct and failing to immediately transfer her to another patient.

- **Count 2: Retaliatory Hostile Work Environment under Title VII, 42 U.S.C § 2000e, *et seq.* ** Gangley claims that IHC retaliated against her based on race and sex when it reassigned her to a "vegetative" patient, knowing Gangley was pregnant and could not adequately care for the patient.
- **Count 3: Constructive Discharge.** Gangley alleges that IHC constructively discharged her because of her race and sex when it failed to prevent McCay's harassment and reassigned her to a patient she could not care for while pregnant.

IHC asks the court to dismiss Gangley's claims because Gangley fails to state a claim. (Doc. 19).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

## DISCUSSION

As discussed above, Gangley brings three claims. The court handles each claim in turn.

## I.    Count 1: Substantive Hostile Work Environment

In Count 1, Gangley alleges that IHC subjected her to a hostile work environment by ratifying McCay's conduct and failing to immediately transfer her to a new patient after she complained. To prove a hostile-work-environment claim, a plaintiff must establish the following elements: (1) she belongs to a protected group; (2) she has been subjected

3

to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms of the employment and create a discriminatorily abusive working environment; and (5) a basis exists for holding the employer liable. *See Stancombe v. New Process Steel LP*, 652 Fed. App'x 729, 733 (11th Cir. 2016) (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010 (en banc)). IHC urges the court to dismiss Gangley's claim because, among other reasons, she fails to allege harassment that rises to the level of "severe or pervasive." The court agrees.

"Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive." *Jackson v. Ala. Dept. of Corr.*, 643 Fed. App'x 889, 891 (11th Cir. 2016) (citing *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000)). When considering whether harassment is objectively severe or pervasive, courts analyze "the frequency of the conduct; the severity of the conduct; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with the employee's job performance." *Jackson*, 643 Fed. App'x at 891.

The Eleventh Circuit applied these factors in *Stancombe* and held that a few instances of harassment do not meet the severe or pervasive element. *See* 652 Fed. App'x at 734-35. In that case, Stancombe sued his employer over two incidents of inappropriate physical contact by a coworker over a roughly one-month period. In the first incident, the coworker hugged Stancombe and touched his buttocks three times in succession. And in the second incident two days later, the same coworker approached Stancombe, who was alone and kneeling, grabbed his head, and made pelvic thrusts in his face. While the Circuit recognized that the coworker's actions were "vulgar and wholly inappropriate," it determined that the "infrequent and isolated" instances of harassment, without more severe conduct, did not satisfy the severe or pervasive element. *See id.* at 735.

To be sure, *Stancombe* is an unpublished decision that affirmed a district court's grant of summary judgment. But as noted by this court just a few years ago, *Stancombe* is persuasive and must be followed because its reasoning has been adopted by the Circuit in other cases. *See Wilkins v. Koch Foods of Gadsden, LLC*, 2022 WL 1749253, at *3 (N.D. Ala. May 31, 2022) (Maze, J.); *see also Tonkyro v. Sec'y, Dep't of Veteran Affairs*, 995 F.3d 828, 838-39 (11th Cir. 2021).

Applying *Stancombe* here, the court finds that Gangley fails to plead facts that would show McCay's harassment was objectively severe and pervasive. According to Gangley, McCay made racially charged comments toward her and sexually harassed her two times in one week.[1] On February 28, McCay made racist remarks toward Gangley and one sexual remark. And on March 3, McCay tried to grope Gangley and followed her to her car when she tried to leave. While McCay's conduct was vulgar and inappropriate, two incidents over a one-week period are like the incidents in *Stancombe*. Thus, Gangley fails to show that McCay's harassment was objectively severe or pervasive. So the court will grant IHC's motion to dismiss Count 1.

The court does not grant Gangley leave to amend her hostile work environment claim in Count 1 because, based on the timeline of events pleaded, further amendment would be futile. So the court will dismiss Count 1 with prejudice.

## II.   Count 2: Retaliatory Hostile Work Environment

In Count 2, Gangley claims that IHC retaliated against her when it transferred her to a "vegetative" patient, knowing that Gangley could not

---

[1] Gangley also alleges that when she reported to McCay's home on February 27, she "was confronted with a shotgun." (*See* doc. 15, p. 5). But Gangley doesn't say who confronted her, nor does she plead any facts that would show the confrontation was motivated by her race or sex.

care for the patient while pregnant.[2] IHC argues that Gangley fails to state a claim.

To state a retaliation claim, a plaintiff must allege sufficient facts to show: (1) she engaged in a protected activity under Title VII, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

Taking Gangley's pleaded facts as true, the court finds that Gangley fails to state a plausible retaliation claim because she does not allege an adverse employment action. The Eleventh Circuit has explained that, "in the context of a Title VII retaliation claim, a materially adverse action 'means [the action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). This standard is objective, so courts view the employer's conduct from "the perspective of a reasonable person in the plaintiff's position." *Burlington Northern*, 548 U.S. at 69-70.

Gangley fails to plead facts that would show her reassignment to a "vegetative" patient would have dissuaded a reasonable worker from complaining about harassment. Indeed, Gangley does not explain what her pregnancy restrictions were or why she couldn't properly care for the new patient. Instead, she alleges in conclusionary fashion that her pregnancy inhibited her from caring for the new patient. Gangley may subjectively believe that she couldn't properly care for the new patient, but without more facts, it's impossible for the court to decide whether a reasonable employee in her position would have felt the same way. So

---

[2] Gangley styles her claim in Count 2 as a "retaliatory hostile work environment claim" rather than a traditional retaliation claim. But given that Gangley complains of a discrete act of retaliation, and the framework for the two claims is the same, the court analyzes Gangley's claim in count 2 as a traditional retaliation claim. *See Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1207 (11th Cir. 2021) (explaining that "retaliatory hostile work environment" claims are retaliation claims under § 2000e-3(a)).

Gangley fails to show an adverse employment action. *See McCone v. Pitney Bowes, Inc.*, 582 Fed. App'x 798, 800-01 (11th Cir. 2014) (affirming dismissal of a retaliation claim where the plaintiff only pleaded a "subjective view" that his new working conditions were adverse).

Because Gangley fails to plead facts to support her retaliation claim, the court will grant IHC's motion to dismiss Count 2. The court will, however, allow Gangley one final opportunity to replead her retaliation claim in Count 2 because the court can imagine a set of facts that would show IHC took an adverse employment action by reassigning Gangley to the "vegetative" patient.

### III.   Count 3: Constructive Discharge

Gangley alleges in Count 3 that IHC constructively discharged her by failing to remedy McCay's harassment and reassigning her to a patient IHC knew Gangley could not properly care for. IHC contends that Gangley fails to allege sufficient facts to state a constructive discharge claim. The court agrees.

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Davis v. Legal Services Alabama, Inc.*, 19 F.4th 1261, 1268 (11th Cir. 2021) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009)). This standard is exacting and even higher than proving a hostile work environment. *See Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1231 (11th Cir. 2001) (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992)). This standard is also objective, so a court should consider whether a reasonable employee in the plaintiff's position would have felt compelled to resign because of the employer's actions. *See Moore v. San Carlos Park Fire Prot. & Rescue*, 808 Fed. App'x 789, 798 (11th Cir. 2020).

1. *The McCay assignment*: Gangley's constructive discharge claim stemming from McCay's harassment fails because Gangley admits that, after her third complaint, IHC transferred her away from McCay and to a

new patient. No reasonable employee would feel compelled to resign over harassment that her employer remedied. And in any event, Gangley alleges that she didn't resign until roughly five weeks after IHC transferred her. (*See* doc. 15, pp. 3-4). So it's unreasonable to suggest that McCay's harassment caused Gangley to resign. *See Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311 (11th Cir. 1989) (no constructive discharge where harassment stopped several weeks before the employees resigned). Because McCay cannot plead facts that will create a constructive discharge after IHC's remedial action, the court will dismiss this part of Count 3 with prejudice.

2. *Vegetative patient*: Gangley's constructive discharge claim based on her reassignment to a new patient also fails because Gangley fails to plead sufficient facts to support her claim. Indeed, all Gangley alleges in support of her constructive discharge claim is that, at the time IHC transferred her to the new patient, "[Gangley] was pregnant and could not provide the required care for the patient due to her pregnancy." (*See* doc. 15, p. 4). Gangley then says that the transfer caused her to be constructively discharged. These allegations, standing alone, are insufficient to show that a reasonable employee in Gangley's position would have felt compelled to resign.

That said, the court can imagine a set of facts about Gangley's care for the new patient that could support a viable constructive discharge claim. So the court will dismiss this part of Count 3 without prejudice.

——

8

## CONCLUSION

For the reasons above, the court **GRANTS** IHC's motion to dismiss (doc. 19). The court **DISMISSES** Gangley's claims stemming from the McCay assignment (Count 1 and part of Count 3) **WITH PREJUDICE**. But the court **DISMISSES** Gangley's claims stemming from her re-assignment (Count 2 and part of Count 3) **WITHOUT PREJUDICE** because, with other facts, Gangley could state a plausible claim.

Gangley must file her second amended complaint by **May 29, 2026.** The court will **not** accept any more amendments, meaning that if Gangley again fails to plead a plausible claim under Rule 12(b)(6), the court will dismiss her claims with prejudice and close this case.

**DONE** and **ORDERED** on May 7, 2026.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

9